**Norfolk**

COMMONWEALTH OF VIRGINIA
DIVISION OF MOTOR VEHICLES, et al.

v.

NANCY P. WILLIAMS

No. 0447-85

Argued September 10, 1985
Decided February 4, 1986

COUNSEL

Palmer S. Rutherford, Jr. (Willcox & Savage, P. C., on brief), for appellants.

G. Curtis Overman, Jr., for appellee.

OPINION

DUFF, J.—The issue in this appeal by the Division of Motor Vehicles (employer) is whether the Industrial Commission has the authority under Code § 65.1-56 to suspend an award for permanent partial loss of the use of a leg and the authority under Code § 65.1-54 to award temporary total disability benefits where incapacity for work has been conceded by the employer. The Commission held the suspension to be in accord with its authority and administrative responsibilities under the Workers' Compensation Act. We agree and affirm.

Nancy P. Williams (claimant) was employed as a field examiner for the Division of Motor Vehicles and was injured in an automobile accident May 5, 1982, during the course of her employment. She sustained an acute contusion of the left lower leg, resulting in a post-traumatic diagnosis of deep vein thrombophlebitis of the left calf. The claim was accepted as compensable by the employer, and an award was entered by the Commission on August 3, 1982, providing for temporary total disability benefits commencing May 13, 1982. She received these benefits through January 2, 1983, when she returned to work for the employer.

A second award was entered by the Commission on February 7, 1984, based upon a Supplemental Memorandum of Agreement executed by the parties November 23, 1983, providing for pay-

ment to the claimant of permanent partial disability benefits for thirty-five percent loss of the use of the left leg for sixty-one and one-fourth weeks. Subsequently, the claimant became temporarily totally disabled. By agreement of the parties, claimant's permanent partial disability payments were suspended, and temporary total disability payments were made for the time that she was totally disabled.

On August 24, 1984, the claimant filed an application for change of condition, alleging that she had again become temporarily totally disabled on May 7, 1984, as a result of the injuries received in the 1982 industrial accident. The deputy commissioner suspended the award of permanent partial disability payments and entered an award for temporary total payments. The full Commission affirmed the award. This appeal followed, with the employer contending that the award of permanent partial disability payments for percentage loss of the leg must be completely paid before the claimant can again receive payments under Code § 65.1-54 for temporary total work incapacity.

Various provisions of the Workers' Compensation Act are pertinent to our inquiry. Code § 65.1-8 pertaining to change in condition states:

Change in condition as used in this Act means a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded or terminated which would affect the right to, amount of or duration of compensation.

Code § 65.1-56 regarding permanent partial disability states:

In cases included by the following schedule the incapacity in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein and shall be in lieu of all other compensation. After compensation has been paid as provided herein, the employee may within one year from the date compensation was last due under this section file an application for compensation for incapacity to work.

The employer argues that under Code § 65.1-56, when an award for a permanent scheduled loss or loss of use is made, it is "in lieu of all other compensation" and the award must be paid in full before the claimant can again file an application for incapacity to work.

We agree with the employer's assertion that an award under Code § 65.1-56 is not dependent upon a claimant's incapacity for work. That section is intended to provide benefits in the nature of indemnity for the loss of a scheduled body member. We also agree that if the scheduled loss is the *sole* cause for work incapacity, once a permanent rating is established, a claimant's compensation payments are made under Code § 65.1-56. However, a claimant may sustain a permanent loss of a member and also work incapacity from other injuries or effects of the accident not embraced in the rated loss.

The statute does not prohibit a claimant from being compensated for all of the actual losses sustained from an industrial accident, be they work incapacity, under Code § 65.1-54, or permanent loss of use of a scheduled member, under Code § 65.1-56. The language "in lieu of all other compensation" in Code § 65.1-56 means that the payments provided for by that section represent the only compensation for the loss of any member mentioned therein, such payments to be measured by the number of weeks listed after each scheduled loss in the statute. *Nicely* v. *Virginia Electric & Power Co.,* 195 Va. 819, 824, 80 S.E.2d 529, 532 (1954), citing *Crawford* v. *Virginia Iron, Coal and Coke Co.,* 136 Va. 266, 118 S.E. 299 (1923). The one year provision for seeking additional work incapacity payments was added to the statute in 1975 and is a time limitation beyond which no further payments can be claimed. We do not interpret the provision as prohibiting the Commission's action in this case.

It would be both unfair and illogical to require a claimant to continue drawing compensation under a Code § 65.1-56 award even though he or she became temporarily totally disabled due to complications from the original injury. To adopt the employer's interpretation of the statute would pose the very real possibility that a claimant would not be compensated for a period of temporary total work disability that occurred while he or she was receiving compensation for a specific loss under Code § 65.1-56. The work disability would have to continue beyond the last payment of

permanent loss benefits before the claimant could begin to be compensated therefor.

We do not think that the legislature intended such a harsh result, which runs counter to the firmly settled policy that the Act should be liberally construed in favor of the injured worker. *Nicely,* 195 Va. at 825, 80 S.E.2d at 532. The Commission's suspension of the permanent award represents a practical solution to the problem and insures that compensation is paid for the type of loss at the time it is being experienced by the claimant. As such, we believe the suspension is authorized within the Commission's administrative responsibilities under the Act. *See* 3 A. Larson, *Workmen's Compensation Law* § 81.30 (1983).

The employer has not contested the fact that the claimant again became disabled for work on May 7, 1984, as a result of the injuries she received in the 1982 accident. The question must be addressed whether there was sufficient evidence in the record to permit a finding that this disability was not embraced in the award for thirty-five percent permanent loss of the leg. If the cause of the work incapacity, either in its nature or extent, was different from that upon which the permanent rating was grounded, then the claimant would be entitled to return to temporary total benefits.

The record shows that the claimant was disabled from the accident on May 5, 1982, until January 2, 1983, when she returned to work. She worked for most of 1983, with the exception of forty-eight intermittent days for which she has been previously compensated. On November 23, 1983, she executed a Supplemental Memorandum of Agreement providing for thirty-five percent permanent loss of the use of her left leg. She was taking the drug Coumadin, a blood thinner, for her phlebitis, at a level that permitted her to remain employed.

On May 7, 1984, her condition worsened. She was hospitalized, and her drug therapy was greatly increased to control the recurring blood clotting. Her physician, Dr. Burdick, advised on August 20, 1984:

Mrs. Nancy Williams will require long term Coumadin therapy. Her present job in terms of another injury would constitute risk to life. I fully expect this disability to continue. Her

last hospitalization in May of 1984 was also related to her industrial injury.

This was credible evidence upon which the Commission could find a change in condition under Code § 65.1-99. Prior to May 7, 1984, the claimant had been working at her normal duties for over a year. This was her condition when, and indeed after, she received in November 1983 the thirty-five percent rating for the left leg. After May 7, 1984, her condition changed, requiring a greatly increased regimen of Coumadin. Furthermore, continued employment represented a threat to her life. Her temporary total disability did not result from the thirty-five percent permanent partial disability of the left leg. Although the temporary total disability and the permanent partial disability were caused in a general sense by phlebitis, at the time of the temporary total disability award, the extent of the disability had greatly increased and justified the Commission's finding of a change of condition and the suspension of the Code § 65.1-56 award.

Accordingly, the award of the Commission is

*Affirmed.*

Coleman, J., and Hodges, J., concurred.